# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | |
| BRADY FOLLIARD, | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | 07-cv-719 (RCL) |
| | ) | |
| SYNNEX CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Relator Brady Folliard brings this *qui tam* suit pursuant to the Federal False Claims Act,
31 U.S.C. §§ 3729–3733 ("FCA"). Folliard is an employee of Insight Public Services, where he
works as a Strategic Account Executive and sells information technology products and services
to federal government agencies. Corrected Second Am. Compl. ¶ 10, Oct. 13, 2010, ECF No. 37
(Compl.). In his complaint, Folliard alleges that the eight named defendants[1] sold products under
government contracts from non-designated countries in violation of the Trade Agreements Act,
19 U.S.C. §§ 2501–2581 ("TAA"), the terms of their procurement contracts, and several other
trade regulations and laws. Defendants have moved to dismiss on several grounds,[2] arguing (1)
that relator's complaint is precluded under the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5), (2)
that relator has failed to plead fraud with particularity, (3) that he fails to state a claim upon

---

[1] Defendants in this case are Synnex Corp. ("Synnex"), Emtec Federal ("Emtec"), Government Acquisitions, Inc.
("Govt. Acq."), Hewlett-Packard ("HP"), GovConnection, Inc. ("GovConnection"), GovPlace, Force 3, and GTSI
Corp. ("GTSI").
[2] Synnex, Emtec, GovConnection, Force 3, and GTSI have moved to dismiss on the first three grounds, HP has
moved to dismiss on the first and fourth grounds, and defendants GovPlace and Govt. Acq. have moved to dismiss
on the second and third grounds.

which relief can be granted, and (4) that his claim is precluded as to defendant HP by *United States ex rel. Folliard v. Hewlett-Packard*, 272 F.R.D. 31 (D.D.C. 2011). As explained below, the motions to dismiss will be granted as to defendants Synnex, Emtec, GovConnection, Force 3, GTSI, and HP, and denied as to defendants GovPlace and Govt. Acq..

## II.     BACKGROUND

Defendants are information technology companies that sell their products to U.S. agencies under General Services Administration ("GSA") Multiple Awards Schedule and Solution for Enterprise-Wide Procurement ("SEWP") contracts. All of the contracts executed by defendants under the GSA and SEWP are covered by the Trade Agreements Act, which prevents—among other things and with limited exceptions—the government from purchasing end-products that originate in non-designated countries. Compl. ¶ 40. Federal Acquisition Regulation 52.225-5(a) lists designated countries for the TAA, and those not listed—including China, Malaysia, Thailand, and the Philippines—are non-designated, meaning the government is generally prohibited from purchasing products that originate there.

At issue here are HP and Cisco products that defendants listed on their GSA Schedules. Relator alleges that these products originated in non-designated countries, and that defendants fraudulently claimed that the products were TAA compliant. Compl. ¶¶ 63, 79, 93, 102, 113, 119, 126. In his complaint, relator lists a number of orders that the government filed with defendants for products that, according to the HP website, came from non-designated countries, but were listed on the GSA Schedule as coming from designated countries. *See, e.g.*, *id.* ¶ 117. As an example, the procurement orders relator lists for defendant GovPlace show ten orders worth $711,346.00 for products that were listed on the HP website as coming from non-designated countries. Compl. ¶ 118. Relator alleges that these products came from non-

designated countries; that defendants were aware that the products were not compliant; that they consciously misrepresented that fact to the government on the GSA Schedules; and that they made a claim for money from the government based on that misrepresentation.

In May 2006, prior to relator bringing suit, an individual named Christopher Crennen filed a *qui tam* complaint under seal alleging similar violations. *United States ex rel. Christopher Crennen v. Dell Marketing L.P.*, 711 F. Supp. 2d 157 (D. Mass. 2010). Crennen claimed "that various information technology vendors had misrepresented and certified falsely that their products complied with the . . . Trade Agreements Act." *Id.* at 159. Included in Crennen's complaint, which was under seal until May 2009, were current defendants HP, Force 3, GovConnection, GTSI, Synnex, and Emtec. *Id.* Crennen had personally examined the country-of-origin labels affixed to computers in federal buildings, and found that "[t]he great majority of these devices were made in non-designated countries, usually China." *Id.* After three-and-a-half years of investigation, the government declined to intervene in the case. *See* Notice of the United States Regarding Intervention at 1, *Crennen v. Dell Marketing L.P.*, 711 F. Supp. 2d 157 (D. Mass. 2010) (No. 06-cv-10546), ECF. No. 22. Defendants in that case moved to dismiss on Fed R. Civ. P. Rule 9(b) grounds and the court granted their motions, holding that because Crennen pleaded "no facts to create a strong inference that a false claim was submitted," a necessary element to a state a claim under the FCA, he had failed to plead fraud with particularity. *Id.* at 162.

Folliard filed his complaint in this case on April 20, 2007, while Crennen's complaint was still under seal. Folliard's complaint remained under seal while the government filed repeated motions for extension of the sealed period, before finally declining to intervene on May 27, 2010. The complaint was unsealed on June 22, 2010 and served on defendants, after which

defendants moved to dismiss. The Court will deal first with defendants' motions to dismiss for lack of jurisdiction pursuant to the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5), and will then reach defendants GovPlace and Gov. Acq.'s motions to dismiss for failure to plead fraud with particularity and failure to state a claim upon which relief can be granted.

## III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To satisfy this test, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, a court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*; *see also Atherton*, 567 F.3d at 681 (holding that complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## IV.    DISCUSSION

Defendants Synnex, Emtec, GovConnection, GTSI, and Force 3 have moved to dismiss for lack of subject-matter jurisdiction under the FCA's first-to-file bar, for failure to plead fraud with particularity under Rule 9(b), and for failure to state a claim upon which relief can be

granted. Defendant HP has moved to dismiss under the first-to-file bar and on *res judicata* grounds, and defendants GovPlace and Govt. Acq. have moved to dismiss under Rules 12(b)(6) and 9(b). As explained below, the Court will grant defendants' motions to dismiss under the first-to-file bar, and will deny defendants GovPlace and Govt. Acq.'s motions to dismiss for failure to state a claim with particularity and to state a claim upon which relief can be granted.

### A.    False Claims Act First-to-file Bar

"[T]he primary function of a *qui tam* complaint is to notify the *investigating* agency, *i.e.*, the Department of Justice," and a *qui tam* complaint "serves first and foremost as notice to the Attorney General that he should investigate the allegations." *United States ex rel. Folliard v. CDW*, 722 F. Supp. 2d 37, 42 (D.D.C. 2010) ("*CDW II*") (emphasis in original); *see also United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) (noting that interpretation of the first-to-file rule should comport with the policy of "ensuring that the government has notice of the essential facts of an allegedly fraudulent scheme") (internal citations removed); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004) ("Once the government is put on notice of its potential fraud claim, the purpose behind allowing *qui tam* litigation is satisfied."). In part due to that consideration, the FCA's first-to-file provision, 31 U.S.C. § 3730(b)(5), states that "[w]hen a person brings [a *qui tam* action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." *Id.* Included in the 1986 amendments to the Act, the first-to-file rule is part of "congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior," and cases should be "analyzed in the context of these twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *United States ex rel. Hampton*

*v. Columbia/HCA Healthcare, Corp.*, 318 F.3d 213, 217 (D.C. Cir. 2003) (quoting *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994)).

In determining whether a complaint is barred by § 3730(b)(5), courts have applied either an "identical facts" test or a "material elements" test, *Hampton*, 318 F.3d at 217–18, but "it is the law of our Circuit that Section 3730(b)(5) bars any action incorporating the same material elements," *Batiste*, 740 F. Supp. 2d 102 (internal quotations removed). A material elements test is preferable to an identical facts test because "3730(b)(5) refers to 'related' actions and 'underlying' facts, language inconsistent with the rigid precision of an identical facts test." *Ortega*, 240 F. Supp. 2d at 12; *see also United States ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.*, 149 F.3d 227, 234 (3rd Cir. 1998) ("[S]ection 3730(b)(5)'s plain language is conclusive; the statute speaks of a 'related action,' not an identical one."). Additionally, courts "must strive to minimize 'duplicative claims' that 'do not reduce fraud or return funds to the federal fisc,'" *CDW II*, 722 F. Supp. 2d at 42 (quoting *LaCorte*, 149 F.3d at 234), and "interpreting section 3730(b)(5) to bar only suits alleging facts identical to those in previous actions would defeat the law's primary objectives." *LaCorte*, 149 F.3d at 233.

When evaluating a § 3730(b)(5) first-to-file motion to dismiss, "[t]he only evidence needed to determine if a complaint is barred . . . is the complaints themselves." *United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 15 (D.D.C. 2003). "*Hampton* . . . counsels that this Court must compare [the complaints] at a sufficiently high level of generality," *CDW II*, 722 F. Supp. 2d at 41, because "permitting infinitely fine distinctions among complaints has the practical effect of dividing the bounty among more and more relators, thereby reducing the incentive to come forward with information on wrongdoing." *Ortega*, 240 F. Supp. 2d at 12.

Examining the *Crennen* and *Folliard* complaints at a high level of generality, it is evident that they incorporate the same material elements of fraud.

In his 2006 complaint, Crennen alleged that each of the defendants improperly certified that the goods "offered on the GSA Advantage! website were in compliance with the . . . TAA," and that—based on his comparison of the country-of-origin listed on the website and the producers' retail listings—defendants "commonly misrepresent the country of origin of their products to make sales to federal buyers." First Am. Compl. at 10, *United States ex rel. Crennen v. Dell Marketing L.P.*, 711 F. Supp. 2d 157 (D. Mass. 2010) (No. 06-10646-PBS) ("Crennen Compl."). Although Crennen named thirty-two defendants in his initial case, he later dismissed all but nine of them, including current defendants HP, Force 3, GovConnection, GTSI, Synnex, and Emtec. *Crennen*, 711 F. Supp. 2d at 159. In his complaint, Crennen—like Folliard—included a list of products sold by defendants that were listed as coming from TAA-designated countries but allegedly actually came from non-designated countries. Crennen Compl. at 10.

Folliard "examined the HP product list and the country of origin listed by HP" and compared it with products listed on the GSA website, which "revealed that defendants were knowingly making material false statements about the country of origin." Compl. ¶ 61–62. Although Folliard also alleges that defendants Force 3 and GTSI misrepresented country-of-origin information for Cisco products (where Crennen's complaint was mainly concerned with HP products), this is irrelevant, as the first-to-file bar applies unless the complaint "alleges a different *type* of wrongdoing, based on different material facts." *Ortega*, 240 F. Supp. 2d at 13 (emphasis added); *see also United States ex rel. Batiste v. SLM Corp.*, 740 F. Supp. 2d 98, 102 (D.D.C. 2010) ("By focusing not only on the underlying facts, but on the type of wrongdoing, this test does justice to the language of Section 3730(b)(5) barring subsequent 'related' actions.

In so doing, the test prevents the less vigilant whistle-blower from using insignificant factual variations to allege what is essentially the same fraudulent scheme already made known to the government."). The word "type" is not self-defining, but the purpose of *qui tam* complaints—putting the government on notice—is instructive in the search for a definition. Crennen's allegations pertaining to HP products gave the government sufficient notice to discover the allegedly fraudulent Cisco products. That Folliard alleged different products sold by the same companies is analogous to *Ortega*, where this Court suggested that the first complaint "alleged . . . behavior similar to that alleged by [the subsequent relator], that various benefits were provided to doctors in exchange for referrals. While the list of benefits might vary slightly, the scheme is the same." *Ortega*, 240 F. Supp. 2d at 16. In the same way that alleging some improper kickbacks put the government on notice of others in the same general scheme, Folliard's allegation that the same defendants also misrepresented country-of-origin information for Cisco products is not the type of significant factual variation that merits circumvention of the first-to-file bar. Similarly, the fact that Folliard alleges that defendants made false claims to different agencies under different contracts does not mean that the complaints incorporate different material elements. *See CDW II*, 722 F. Supp. 2d at 41 (rejecting the argument that "the different procurement contracts and contracting agencies are relevant" to a determination of similarity as "the text of § 3730 and the statute's underlying policies do not support the creation of a distinction between the two complaints on this basis."). In FCA jurisprudence, "courts must strive to minimize duplicative claims that do not help reduce fraud or return funds to the federal fisc. . . .'" *Id.* at 42 (internal quotations removed). Folliard's complaint does neither, particularly in light of the fact that an investigation did occur following Crennen's complaint, and thus dismissal of Folliard's complaint comports with the *qui tam* provision's policy goals.

As in his claim against CDW, et al., "Folliard never worked for the defendants, and his complaint contains no 'insider' information that a DOJ attorney who was already investigating [the prior] complaint could not have learned." *CDW II*, 722 F. Supp. 2d at 43. Compared at a high level of generality, it is clear that his complaint does not allege "a different type of wrongdoing, based on different material facts than those alleged in the earlier suit," *Ortega*, 240 F. Supp. 2d at 13, and as such it should be dismissed. Although there may be some cases in which a prior complaint dismissed for failure to plead with particularity would not preclude subsequent complaints, this is not one of them. Folliard insists that it is unfair that defendants will not be brought to justice based on their alleged wrongdoings, but "[i]t is irrelevant whether the United States put [the facts in the first complaint] to their best use. . . . the question is whether Folliard's lawsuit alleges a materially similar situation that investigations launched in direct consequence of [the prior] complaint *would have* revealed." *CDW II*, 722 F. Supp. 2d at 43 (emphasis in original) (internal quotation marks removed). The Court is satisfied that an investigation of Crennen's complaint would—and most likely did—reveal the facts and false claims that Folliard alleges.

Folliard primarily relies on a series of cases suggesting that where the first complaint is dismissed under Rule 9(b), the FCA's first-to-file bar never applies. *See, e.g.*, *Campbell v. Redding Medical Center*, 421 F.3d 817 (9th Cir. 2005). But a rule of 9(b) non-preclusion does not further the policy goals of the FCA. The FCA walks "a fine line between encouraging whistle-blowing and discouraging opportunistic behavior," and courts "must strive to minimize duplicative claims that do not reduce fraud or return funds to the federal fisc." *CDW II*, 722 F. Supp. 2d at 42. A broad non-preclusive rule would not minimize duplicative claims, would

encourage opportunistic behavior, and would have a negligible impact on desirable whistle-blowing.

Ostensibly the reason for such non-preclusion is that courts, in delineating the limits of the first-to-file rule, have sought to avoid giving preclusive effect to overly broad, generic claims that are brought primarily to hold a potential relator's place in the *qui tam* line. *See, e.g.*, *Walburn*, 431 F.3d at 973. This has led to courts refusing to give preclusive effect to cases dismissed for failure to plead fraud with particularity. *See, e.g.*, *id.* But "it is entirely possible that a complaint may provide sufficient information to cause the government to launch its own investigation of a fraudulent scheme without providing enough information under Rule 9(b) to protect the defendant's interests." *Batiste*, 740 F. Supp. 2d at 104. In such a case, "it would be proper to dismiss the complaint against the defendant for purposes of Rule 9(b) but to allow the preemption of any subsequent related actions for purposes of the 'first-to-file' rule." *Id.* Congress amended the FCA "to do away with . . . parasitic suits," *LaCorte*, 149 F.3d at 233, and because suits where the government already knows the essential facts of the fraudulent scheme "do not help reduce fraud or return funds to the federal fisc," *id.* at 234, they should be barred. In *LaCorte*, on which the majority of relator's cited cases depend, the court made clear that the primary purpose of Rule 9(b) dismissal is *deterrence*, not preclusion. *Id.* Where the second relator "alleges a 'materially similar situation that investigations launched in direct consequence of [the first complaint] *would have* revealed,'" the claim will be precluded. *CDW II*, 722 F. Supp. 2d at 43 (*quoting United States ex rel. Chovanec v. Apria Healthcare Group Inc.*, 606 F.3d 361, 365 (7th Cir. 2010)).

Even were this Court persuaded by the logic of the non-preclusive standard, each of the cases cited by Folliard in support of it can be readily distinguished. Relator relies on *Campbell*,

421 F.3d 817, and *Poteet*, 552 F.3d 503 (6th Cir. 2009), but in both cases the first claim filed was dismissed under the FCA's public disclosure provision, 31 U.S.C. § 3730(e)(4)(A),[3] and in both cases the court's reasoning was driven by the fact that the first relators were not original sources and the facts they alleged had been publicly disclosed.

In *Campbell*, the Ninth Circuit sought to limit the holding of *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001), where the court had held that "dismissed or not, [the first relator's] action promptly alerted the government to the essential facts of a fraudulent scheme," and therefore barred subsequent claims. *Id.* at 1188. The *Campbell* court drew a distinction because of the public disclosure provision, holding that the first-to-file bar did not apply "because [in a public disclosure case,] a pending action filed by a non-original source does not alert the government to the essential facts of a fraudulent scheme." *Campbell*, 421 F.3d at 822. This is not a public disclosure case, and Folliard is not an insider privy to special information; he does not deserve the protection established in *Campbell*. Moreover, Crennen's complaint *did* alert the government to the essential facts of the fraudulent scheme.

Relator cites to language in *Campbell* which counsels that "an overly broad interpretation of the first-to-file bar, allowing even sham complaints to preclude . . . would contravene [Congress's intention to incentivize whistle-blowing]." *Id.* at 821. But the standard the Court lays down today *does not* grant preclusive effect to sham complaints: only those that provide notice to the government sufficient for it to launch its own investigation will be given preclusive effect. This is not a case where dismissal would permit "opportunistic plaintiffs with no inside information to displace actual insiders with knowledge of the fraud." *Id.* at 821. Insofar as their status as insiders is concerned, Crennen and Folliard are on relatively equal footing, and

_____

[3] The public disclosure provision states that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . unless . . . the person bringing the action is an original source of information." 31 U.S.C. § 3730(e)(4)(A).

Folliard's complaint does not bring any substantial new information to the government's attention.[4]

Folliard attempts to independently base his argument on *Walburn*, 431 F.3d 966, where the Sixth Circuit stated that "[a] complaint that fails to provide adequate notice to a defendant can hardly be said to have given the government notice of the essential facts of a fraudulent scheme, and therefore would not enable the government to uncover related frauds." *Id.* at 973. This statement is inaccurate. It is not absurd, as a matter of law or of policy, that the essential facts of a fraudulent scheme could be necessary but not sufficient for a complaint to be pled with particularity under Rule 9(b). "The point of Rule 9(b)'s *heightened* pleading standard is that it provides *more* than what is normally required to give adequate notice of the essential elements of a claim . . . it is entirely plausible that a complaint may provide sufficient information to cause the government to launch its own investigation of a fraudulent scheme without providing enough information under Rule 9(b) to protect the defendant's interests." *Batiste*, 740 F. Supp. 2d at 104 (emphasis in original). While there is no reason to question the Massachusetts District Court's determination that Crennen failed to plead fraud with particularity, there is equally no doubt that Crennen's allegations gave the government sufficient information to check the contracts and sellers in question and learn whether there had been any false claims in connection with the alleged misrepresentations.

---

[4] *Poteet* is similarly inapposite, and its discussion of 9(b) pleading requirements as they relate to the first-to-file rule is almost entirely dicta. The court dismissed Poteet's claim because it was based on information that had previously been disclosed, and discussed the first-to-file rule only to "to explain why [it] does not technically preclude jurisdiction in this case," *Poteet*, 552 F.3d at 515, saying that Poteet's complaint would not have been precluded because the first *qui tam* complaint was barred by the public disclosure rule as well. *Id.* at 518. As dicta from another circuit, Poteet's discussion of the first-to-file rule is clearly not binding here. However, even if it was not dicta, the decision primarily rested on the Sixth Circuit's opinion in *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (2005)—which is based on a faulty interpretation of *LaCorte*, 149 F.3d 227—and should thus be disregarded, as explained below.

The only authority the *Walburn* court cites in laying down its rule of Rule 9(b) non-preclusion is *LaCorte*, and it does so in a manner inconsistent with *LaCorte*'s true meaning. Responding to relator's argument for an identical facts standard, the court in *LaCorte* reasoned that such a standard would allow duplicative cases that "do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." *LaCorte*, 149 F.3d at 234. The relators countered that this would encourage over-broad complaints intended to preempt, but the court did not believe its decision "[would create] an undue risk that plaintiffs will engage in such artful pleading" because Rule 9(b)'s particularity requirement "provides sufficient *deterrence* against overly broad allegations." *Id.* The court did not even hint at a rule of non-particularity non-preclusion, instead placing emphasis—correctly—on the deterrent effects of Rule 9(b). This Court holds that "the *Walburn* court goes too far" in extending *LaCorte*, and reaffirms that in some situations "it would be proper to dismiss [a] complaint against the defendant for purposes of Rule 9(b) but to allow the preemption of any subsequent related actions for purposes of the 'first-to-file' rule." *Batiste*, 740 F. Supp. 2d at 104.[5]

---

[5] Relator also points to an isolated statement, taken out of context, in this Court's prior opinion in *Ortega*, which reads "[t]he strictures of Rule 9(b) limit the preclusive effect of the first-filed complaint to claims that *can be* pleaded with particularity, thus obviating the danger of opportunistic relators filing unsupported placeholder complaints for the sole purpose of preemption." *Ortega*, 240 F. Supp. 2d at 13 (emphasis added). Had the Court used the word "are" in the place of "can be," Folliard's argument might have merit. But the Court did not, and did not intend to, because an exception to the first-to-file exclusionary rule should only cover those "sham complaints," *Campbell*, 421 F.3d at 821, that are filed "in an effort to preclude future relators from sharing in any bounty eventually recovered," *Walburn*, 431 F.3d at 973, and are "worded . . . in excessively general terms for the purpose of thwarting later claims," *LaCorte*, 149 F.3d at 234.

In *LaCorte*, which is the main case *Walburn* and *Ortega* derived their authority from, the court emphasized that Rule 9(b)'s primary function in the first-to-file context is to "provide[] sufficient deterrence against overly broad allegations" and hinted at today's holding by suggesting that the analysis might change were there an "indication that any of the original plaintiffs . . . worded their complaints in excessively general terms for the purpose of thwarting later claims." *Id. Ortega*'s restriction of preclusive effect to those claims that "can be pleaded with particularity" must be read in tandem with the suggestion that the particularity requirement would obviate the "danger of opportunistic relators filing unsupported placeholder complaints for the sole purpose of preemption." Sham complaints cannot be pled with particularity. Crennen's *was* not. This distinction is important, and Crennen's complaint gives the lie to the Sixth Circuit's assertion in *Walburn* that a complaint dismissed for failure to plead fraud with particularity "can hardly be said to have given the government notice of the essential facts of a fraudulent

Here, relator's suit as to defendants Synnex, Emtec, GovConnection, Force 3, GTSI, and HP is based on the same material elements of the complaint brought by Crennen. Allowing the complaint to go forward would not reduce fraud or return money to the federal fisc, and it *would* set a precedent that encourages opportunistic relators. Folliard's arguments are unpersuasive and the cases he cites are inapposite. As such, we grant defendants their motions to dismiss pursuant to the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5).

### B.    Defendant HP's Motion to Dismiss on *Res Judicata* Grounds

Although relator's claims against defendant HP have been dismissed under the FCA's first-to-file bar, those claims could also be dismissed on *res judicata* grounds. Folliard previously brought suit against HP under the FCA, in a case that was dismissed for failure to state a claim and failure to plead fraud with particularity. *See United States ex rel. Folliard v. Hewlett-Packard Company*, 272 F.R.D. 31 (D.D.C. 2011).

A claim may be dismissed on *res judicata* grounds where there is (1) a common identity of parties; (2) a judgment from a court of competent jurisdiction; (3) a final judgment on the merits; and (4) a common identity of the causes of action. *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009). It is evident, and relator does not dispute, that both Folliard and HP were parties to the first suit. It is also clear from the record that the United States District Court for the District of Columbia is a court of competent jurisdiction. And despite Folliard's conflation of the common identity of causes of action and final judgment requirements, a 12(b)(6) dismissal is a judgment on the merits. *See Best v. Kelly*,

---

scheme." *Walburn*, 432 F.3d at 973. Though Crennen did not plead facts that created a strong enough inference that a false claim had been made, his description of defendants' contracts, their alleged misrepresentation of TAA compliance, and the alleged presence of non-compliant products in federal buildings provided enough information that would "enable the government to uncover related frauds." *Id.* Indeed, the United States spent nearly three years investigating Crennen's complaint before declining to intervene, and this Court has no doubt that in those three years they were able to make the inferential leap from Crennen's complaint to the contracts in question here.

39 F.3d 328, 331 (D.C. Cir. 1994) ("dismissals under Rule 12(b)(6) are [adjudications on the merits], unless the court specifically states otherwise.").

The only issue seriously in dispute is whether or not the two cases share a common identity of causes of action. As relator points out, there is an identity of the causes of action when the cases are based on the "same nucleus of facts," because "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page* v. *United States*, 729 F.2d 818, 820 (D.C. Cir. l984). Relator argues that because the first case (the present one, hereafter "*Folliard I*") was based on GSA contracts and the second ("*Folliard II*") was based on SEWP contracts, there is not a common identity of causes of action, but in doing so he fundamentally misunderstands how the doctrine of *res judicata* functions. Although Folliard's first suit did not include claims about HP's contracts with NASA under the SEWP, those claims arose from the same nucleus of facts—namely that relator discovered alleged TAA violations by comparing government websites with the HP website—and it is obvious that he could have easily included them in his first suit. The doctrine of *res judicata* does not only bar claims that were brought in a finally adjudicated suit; it also "forecloses all that which *might have been* litigated previously." *National Pension Fund v. Indus. Gear Mfg.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (emphasis added); *see also Richardson v. Solis*, 2010 WL 5373938, at *1 (D.D.C. December 22, 2010) (holding that a prior judgment on the merits "bars the relitigation of the claim and any other claims that *could have* been submitted to the Court" (emphasis added)); *Nader v. Democratic Nat'l Comm.*, 590 F. Supp. 2d 164, 170 (D.D.C. 2008) (barring claims where they were or could have been brought in previous civil action). Folliard relies on *Faulkner v. Gov't Employees Ins. Co.*, 618 A.2d 181, 183 (D.C. 1992), which is neither binding here nor analogous to this case. In *Faulkner*, a D.C. Court of Appeals

case, the plaintiff brought two separate suits—one to recover no-fault economic damages from his insurer and another for wrongful cancellation of his insurance policy. *Id.* at 182–83. The claims in Faulkner's second suit could not be brought in the first because "the relevant actions by [defendant] did not even *occur* until long after the events upon which the first action was based." *Id.* at 183. Here, by contrast, a brief perusal of relator's complaints reveals that he had all of the information he needed to bring both suits at the time he brought the first. He even spends a great deal of time in his complaint for this case discussing the SEWP contracts that were the subject of *Folliard II*. Compl. at ¶¶ 27–36. Because his claims deal with the same types of contracts and the same general factual issues, there is no real question that they "form a convenient trial unit" that would merit preclusion. *Apotex, Inc.* v. *FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). Folliard has cited no authority that persuades us otherwise, and his allegation that HP agreed to allow him to split his claims is not supported by the facts. HP's motion to dismiss for failure to state a claim is moot in light of our dismissal under the first-to-file provision, but we would grant it even were it not.

### C. Defendants GovPlace and Government Acquisitions, Inc.'s Motions to Dismiss for Failure to Plead Fraud with Particularity

Defendants GovPlace and Govt. Acq. have moved to dismiss, arguing that Folliard's complaint is fatally flawed on 12(b)(6) and 9(b) grounds because he has failed to plead fraud with particularity. The False Claims Act is "self-evidently an anti-fraud statute," so complaints under it must comply with Rule 9(b). *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002). To plead a fraud claim with particularity, a plaintiff must "set out the details of the specific scheme, supply the time, place, and content of false representations, and link that scheme to claims for payment." *U.S. ex rel. Bender v. North Am. Telecomms., Inc.*, 2010 WL 4365531, No. 06-1432, at *4 (D.D.C. Nov. 4, 2010); *see also Kowal v. MCI*

*Commc'ns, Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (holding a plaintiff "must state the time, place and content of the false misrepresentations, the fact misrepresented and what was [ob]tained or given up as a consequence of the fraud").

Defendants suggest that because relator cannot point to specific claims for payment, his complaint fails to meet the standard required by Rule 9(b). They are mistaken, as their argument "conflates the FCA's requirement that a false claim exist with Rule 9(b)'s requirement that the *misrepresentations* underlying the false claim be pled with particularity." *U.S. ex rel. Folliard v. CDW Technology Servs., Inc.*, 722 F. Supp. 2d 20, 33 (D.D.C. 2010) ("*CDW I*") (emphasis added). Although a plaintiff must "allege that a false claim does, in fact, exist," *United States ex rel. Folliard v. Hewlett-Packard*, 272 F.R.D. 31, 35 (D.D.C. 2011), the plaintiff "need not allege the existence of a request for payment with particularity," *United States ex rel. Davis v. District of Columbia,* 591 F. Supp. 2d 30, 37 (D.D.C. 2008) (cited with approval in *CDW I*, 722 F. Supp. 2d at 26); *see also CDW I*, 722 F. Supp. 2d at 31 ("Although defendants argue that relator must provide transaction dates on which individual claims were submitted, this is incorrect. . . . the existence of a false claim need not be pled with particularity.").

Defendants cite to *United States ex rel. Brown v. Aramark*, 591 F. Supp. 2d 68 (D.D.C. 2008), and its proposition that "a relator must provide details that identify particular false claims for payment that were submitted to the government." The relator's complaint in *Aramark*, however, was much more generic than Folliard's. The relator alleged that Aramark was "recycling food . . . and billing the government for that food" but could in no way connect those acts with the sale or purchase of goods by the government or the defendants. *Id.* Furthermore, the court in *Aramark* emphasized that "rule 9(b) is not intended to be a formalistic bar to sub-standard pleadings, but rather a guarantee that all defendants have sufficient information to allow

for preparation of a response." *Id.* at 75 (internal citations removed); *see also U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (holding that the particularity requirement means that defendants must be able to "defend against the charge and not just deny that they have done anything wrong"). Given Folliard's clear allegations of misrepresentations and reference to specific procurement orders placed by the government, there is no doubt that defendants have been given sufficient information to respond and defend themselves.

Defendants cherry-pick from a number of cases, including *CDW I*'s statement that "the FCA attaches liability, not to underlying fraudulent activity, but to the claim for payment." 722 F. Supp. 2d at 28. Their quotation from *CDW I* omits the preceding line, which distinguishes the claims to which the court was referring from the claims before the Court here: "[a]bsent an allegation that these listings were related to purchases, no inference can be drawn that false claims for payment were submitted." *Id.* In this case, there is an allegation that the listings were related to purchases, and inferences can be drawn from the purchase orders that false claims for payment were submitted. In discussing a claim separate from the one to which defendants' citation referred, the *CDW I* court stated that "[t]he allegation that the government purchased the products listed in Exhibit 1B permits the inferential leap that claims were actually submitted for the items purchased." *Id.* (internal citations removed). Here, as in *CDW I*, "[r]elator's allegations provide reliable indicia from which it may be inferred that the allegedly falsely listed products were purchased and thus were tied to false claims for payment." *Id.* at 29. Defendants would have the Court focus instead on the *CDW I* court's explanation that "[b]ecause relator has not alleged that these particular mislistings were material to a government purchase . . . the Court cannot make the inferential leap that claims were actually submitted for these items . . . and

therefore cannot draw a reasonable inference that the defendant is liable for the misconduct alleged. Thus, relator's allegations regarding the GSA mislistings fail to state a claim under Rule 12(b)(6)." However, the court in *CDW I* granted the defendants' motions to dismiss in part and denied in part, and defendants leave out a parenthetical which explains the distinction between the claims dismissed and those not: "(*compare id.* P 70 (alleging that false statements were made under SEWP and likely led to purchases from non-designated countries))." *Id.* at 36.

Though *Crennen* is not binding here, defendants cite to it for support, so the Court considers it worthwhile to point out that even under the standard laid down in *Crennen*, Folliard's complaints would be allowed to go forward. In *Crennen* the court noted that "[r]elator pleads no facts to create a strong inference that a false claim was submitted . . . Without evidence of who sold the products relator found in the federal buildings, whether those products were sold through GSA Advantage!, or when those products were sold, these allegations that defendants must have submitted fraudulent claims is [sic] deficient." *Crennen*, 711 F. Supp. 2d at 162. Folliard has provided evidence pertaining to products that were allegedly misrepresented as TAA compliant and were the subject of procurement orders placed on specific dates through the GSA website. These facts create a strong inference that a false claim was submitted, and as such defendants' motions would be denied even were the Court bound by *Crennen*'s precedent.

This logic also discredits defendants' citation to *Hewlett-Packard*, 272 F.R.D. 31, where the court dismissed Folliard's claims against HP because he did not "point to anything other than the general popularity of some of the products on his list to support the allegation that a false claim was submitted to the government." *Id.* at 34–35. Folliard has done far more than that in the present case. The court in *Folliard v. Hewlett-Packard* characterized Folliard's complaint as "little more than a list of 38 HP products available for sale on the NASA SEWP website that

mistakenly identify the country of origin," a shortcoming his complaint here does not share. There is enough information in the record to infer that a false claim was made, and the first HP case is distinguishable on that ground.

Defendants also attempt to attack Folliard's complaint based on the fact that he does not provide the names of individuals involved in the fraudulent scheme, in contravention of the apparent requirement that pleaders "identify individuals allegedly involved in the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). But other courts in this district have convincingly distinguished *Williams*, pointing out "the Williams court disapproved of that complaint's failure to identify individual defendants where the relator had worked with both defendant companies for five years," and holding instead that in a situation where a relator does not work for a defendant, "the absence of [that defendant's] named . . . employees should not render the otherwise detailed complaint deficient under Rule 9(b)." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.,* 685 F. Supp. 2d 129, 138–39 (D.D.C. 2010) Were that distinction not enough, Judge Huvelle pointed out that *Williams* and *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373 (D.C. Cir. 1981)—on which the *Williams* court relied heavily—are both "distinguishable because the complaints in those cases had many shortcomings under Rule 9(b)." *CDW I*, 722 F. Supp. 2d at 32. The relator in *Williams* alleged "no start date [for the fraudulent activity], name[d] a laundry list of individuals without specifying their relation to the fraudulent scheme . . . allege[d] a place only twice . . . and set[] forth no facts that exemplify the purportedly fraudulent scheme." *Williams*, 389 F.3d at 1258. *Joseph* was an FCA claim brought against a United States Senator for his alleged payments to an aide while the aide was not doing official legislative business. The court dismissed the relator's complaint because it "could hardly have been more generalized and vague. He did not specify

which members of the Senator's staff were involved, and he left unstated just what personal services they performed and precisely when those activities occurred." *Joseph*, 642 F.2d at 1385–86. Folliard's complaint is not similarly deficient, and the mere fact that he did not name specific defendants is not sufficient to merit dismissal.

Folliard has alleged enough facts to create a strong inference that a false claim was made. His description of the alleged misrepresentations of product compliance and inclusion of specific procurement orders for those products allows his complaint to survive a motion to dismiss for failure to plead fraud with particularity. Defendants have more than enough information to "defend against the charge and not just deny that they have done anything wrong." *Williams*, 389 F.3d at 1259. They argue that discovery will be burdensome and inconvenient, but with the procurement orders in hand, that is simply not the case. As the *CDW I* court explained in denying defendants' motions to dismiss:

> Relator's accusations are not vague, and defendants have been told exactly what the fraud entails. Discovery can be pointed and efficient, with a summary judgment following on the heels of the complaint if . . . records discredit the complaint's particularized allegations. To say that fraud has been pleaded with particularity is not to say that it has been proved (nor is proof part of the pleading requirement). [Relator's] complaint may be wrong, but defendants have been given enough information to defend against the charge and not just deny that they have done anything wrong.

722 F. Supp. 2d at 33 (internal citations removed). If the facts are as defendants say they are, they should have no trouble putting on enough evidence to support a motion for summary judgment. Their motions to dismiss for failure to plead fraud with particularity are denied.

GovPlace and Govt. Acq.'s motions to dismiss for failure to state a claim upon which relief can be granted are also denied. Relator has alleged that a false claim occurred. *See* Compl. at 37 ("These sales represent false claims presented by the defendant to the United States

Government."); *see also* Compl. at 48 ("Defendant GovPlace offered and sold products to the Government that were not from designated countries."). For the purposes of a motion to dismiss, a court is required to "accept as true all of the factual allegations contained in the complaint," *Atherton*, 567 F.3d at 681, and to grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1271. As explained above, relator's allegations about the GSA Schedule listings and procurement orders are sufficient to support an inference that false claims occurred, and move his complaint across "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (internal citations removed).

## V.    CONCLUSION

There is no question that Folliard has been an active relator in recent years. But in spite of defendants' attempts to discount relator's suit on that ground, the Court has no doubt that his complaint meets Rule 9(b)'s heightened pleading standard and is sufficient to withstand a motion to dismiss. On the other hand, his claims against defendants Synnex, Emtec, GovConnection, Force 3, and GTSI are clearly precluded by the FCA's first-to-file provision. Though Crennen's case was dismissed for failure to plead fraud with particularity, his complaint supplied enough information for the government to begin an investigation that would have revealed the facts that Folliard alleges here. The Court is concerned about the preclusive effect of overly broad placeholder allegations, but the strictures of Rule 9(b) ensure that those complaints will not go forward and that opportunistic relators will be deterred from trying to hold their place in line. The Court grants defendants' motions to dismiss under the first-to-file bar, but denies defendants GovPlace and Govt. Acq. their motions to dismiss for failure to state a claim and failure to plead fraud with particularity. If GovPlace and Govt. Acq. are right in suggesting that Folliard's allegations are spurious, it should not be difficult to proffer evidence and promptly file for

summary judgment. Though the government has not intervened, Folliard deserves his bite at the apple, and this Court will not deny him that opportunity where his allegations so strongly suggest that something questionable may be afoot.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on July 19, 2011.